Mr. Chief Justice Johnson delivered the opinion of the Court. The question first presented in this case is whether the appellant has been surprised by the appellee, and that too without any negligence on his part; and secondly, in case that such surprise has been shown, whether it has been productive of any injury. The whole case must turn upon the fairness or unfairness of the conduct of the appellee’s counsel in procuring the judgment at law, and this can be determined alone by the testimony as it is exhibited upon the record. The bill charges in substance that in consequence of an understanding between the counsel of both parties that the case should be settled out of Court, he was thrown off his guard and that therefore it was that he failed to defend at law. The respondent on his part denies that any unfairness has been practised, but on the contrary insists that he has had the benefit of a fair and regular trial at law, and that consequently such a case does not exist as to call for the intervention of this Court. We will now proceed to look into the testimony and to ascertain if practicable how this matter really stands^ David J; Baldwin,*the partner of Albert Pike, and one of the attorneys of the appellant expressly admits that Col. Fowler, (the attorney of the appellee,) notified him at a term of the Court previous to the trial, that he intended to exact the full penalty. He also stated that when the case was called, he (Baldwin) was arranging the papers for the purpose of discussing a demurrer, and that whilst thus engaged Col. Fowler spoke to him of some arrangement or understanding between himself and Major Lawson, but that if he (Baldwin) desired to go on and settle the case upon the record as shown he had no objection. He stated that he then told him (Fowler,) that Major Lawson had before told him the same thing, but that, as the case had been called for trial he supposed that he (Fowler,) intended to go on with it. He then stated that in the existing state of things and as the matters involved in the case which lay entirely within the knowledge of himself (Fowler) and Lawson, that for himself he would rather not have anythingTur-ther to do with it, and finally that as Mr. Pike had previously managed the case, and as he did not understand the merits of jt he would positively have nothing to do with it. Daniel Pdngo also a witness for the appellant, stated that he was present at the trial in the court of law, and that he had no recollection that Mr. Baldwin appeared in the case, but that, on the contrary, his best recollection was that no person appeared on the part of Lawson. This is the substance of the testimony on the part of the appellant touching the alleged surprise. The appellant appeared before the Court at the time of the trial and the rendition of the judgment. The first piece of evidence, in order, on the part of the appellee is the record, which is as follows, to-wit: “And now at this day came the said parties by their respective attorneys, and the Court being now well and sufficiently advised of the matters of law arising on the demurrer of said_defendants to the plaintiff’s first and second replications, to their fifth plea in this case, doth consider and adjudge that said demurrer be overruled: whereupon the said parties waived their right to have a jury in this case expressly, and by consent, submitted the cause and the issue joined to the Court in place of a jury, &c. Gordon N. Peay testified that he was the clerk of the Court, and present at the trial of the case at law between Bettison and Lawson and Thorn, that he distinctly recollected that on the trial of said case both parties appeared by their attorneys, Col. A. Fow- . ler for the plaintiff (Bettison,) and David J. Baldwin for the defendants, (Lawson & Thorn,) that after the judgment was rendered on the demurrer in said case, the parties waived their right to a jury, and the cause was submitted by consent of parties to the Court, in the place of a jury, and that David J. Baldwin, as the attorney for the defendants, Lawson and Thorn, was present, at the trial and submitted the case to the Court for them. Charles P. Bertrand, another witness introduced by the appellee, testified that he was present at the trial of the case between the same parties, in the Pulaski Circuit Court, that D. J. Baldwin, as attorney, represented the defendants, that according to his best recollection a jury was waived by him and the cause submitted to the Court sitting as a jury. Absalom Fowler, the last witness introduced, testified that he instituted the suit at law mentioned in the bill and answer for Bettison against Lawson & Thorn, who filed several pleas in bar thereof and thereto, signed by Pike & Baldwin, their attorneys, that said suit was continued from term to 'term on request of said Lawson and especially at one term on his request made through Albert Pike, one of his said attorneys, that he would settle up by the next term, and pay over whatever might be found due from him to said Bettison, which he believed to be the April term, 1845 ; that at the April term,. 1847, a demurrer, which said Lawson & Thorn had filed to a part of the pleadings, was overruled: that Mr. Baldwin, one of said attorneys and who had argued the demurrer, being then present, and on the overruling of said demurrer, said Baldwin rested thereon, but voluntarily consented to submit, and did then and there voluntarily and freely submit the issues joined and the whole cause to the court sitting as a jury, and waived the right to a trial and assessment of damages by a jury. He further stated that said Pike never proposed to make a settlement of the matter with him for ■ Lawson, and that he never at any time agreed that theprogress of tbesuit atlawshouldbesuspendeduntilsuchsettle ment was made, and that at the term previous to the judgment he sent a message to Lawson by his said attorney, Baldwin, to come and pay up as he expected or intended to exact of him all that the law would give to Bettison, specifying ten per cent, per month and lawful interest. The current of testimony tending to show that Baldwin appeared and represented Lawson at the trial of the cause in the court of law, is wholly irresistible and consequently that fact must be regarded as fixed and unalterably established. (See 11, Illinois 91.) It will not be necessary, under the state of case here presented, to discuss the legal effect of an appearance by an attorney at law, who is a mere volunteer and acts without the authority of the party, whom he assumes to represent. The attorney, who is proved to have represented Lawson in this case was not only authorized to practice law in the Court where the trial was had and the judgment rendered, but he was likewise the attorney of record regularly employed and retained by Lawson to represent his interests and to protect his rights in the defence of the case. This proposition being true, it would seem to be quite immaterial whether Lawson actually knew that the trial would take place at the term of the Court at which it was brought on or not. The Court" of Appeals of the State of Kentucky, in the case of Barrow v. Jones (10th J. J. Marshall, 470) said, “We are of opinion that the bill does not present a case which authorized the relief given. It was the fault of the complainant’s attorney, to go into trial unprepared, or if he did, to suffer a verdict to be rendered in the absence of the complainant, or any authorized agent. For injuries resulting to clients from negligence or inattention on the part of their attorneys, Courts cannot give redress against the other party to the suit. Redress must be sought in a new action against a new party. The discovery of evidence or new testimony relevant to the point in issue, which, by reasonable diligence, could have been produced, is no cause for a new trial; going into trial unprepared should rather operate against an application for a new trial, instead of in its favor. Where it does not clearly appear that the result of a new trial ought to be in favor of the applicant, it should be awarded with much caution if at all. The case of Green v. Robinson (5 Howard Rep. Mississippi, 105) is to the same effect. The Court in that case said, that “It is a general principle that the judgment or decree of a Court of competent jurisdiction shall be final as to the subject matter decided, and not as to that merely, but as to every other which might have been decided. The law abhors multiplicity of suits, and it is a cherished object with Courts of Justice to put an end to litigation. Some period must be prescribed to controversies of this sort, and what period can be more proper than that which affords a full and fair opportunity to examine and decide all claims of the litigants. This imposes no hardship since it only requires a reasonable degree of vigilance and attention. But a contrary course might be highly oppressive and endanger the stability of titles and the security of all our rights. Hence it has become an established rule that equity never will interfere to grant a new trial of a matter which has already been discussed in a Court of law, a matter capable of being discussed there, and one of which a Court of Law has full jurisdiction. 2 Story's Eq. 179. It is not sufficient to show that injustice has been done, but that.it has been done under circumstances which authorize the Court to intefere. Equity, then, as a general rule, will not interfere where the party could have availed himself of the defence on which he seeks a new trial or injunction, and neglected to make it on the trial. Neither will he be relieved, if he was prevented from doing so by the mistake of his counsel in filing the plea which does not cover his defence. 2 Story 180.” “In Bateman v. Willac, 1 School & Lefroy, 201, Lord Redesdale observed that a bill for a new trial was watched with extreme jealousy. The Courts must not only be satisfied that injustice has been done, but that it was not owing to the mere inattention of the party. In Williams v. Lee, 3 Atkins 224, Lord HaRdwick lays down the same rule, and remarks that relief will only be granted after verdict in cases where the plaintiff knew the fact to be otherwise than what the jury have found and the defendant was ignorant of it at the trial. The case of Young v. Donner is also strongly in point. See 5 Litt. p. 10. The Court, in that case, said that “ Where by fraud or any artful contrivance of one party, or by unavoidable accident, a valid de-fence is kept out of sight, the Chancellor may interpose. But it is not sufficient for the party applying to the Court of Equity for a new trial, to exhibit good grounds; he must also show that it was out of his power, owing to some substantial cause, to make the application to the Court of Law in due time. In this case the complainant was represented upon the trial by an attorney at law of his own selection, and of course, one in whom he had confidence to manage his defence and to guard his rights. This being the case the legal presumption is that he was duly and fully advised of every fact and circumstance which could be used in behalf of his client, and also that his client was kept duly advised as to any matter that would make either for or against him, and which had come to the knowledge of the attorney. The fact that the attorney consented to the trial and joined in the submission of the cause to the Court, and that too after having been apprised of an understanding that it was to be settled out of Court, raises a presumption, which is scarcely resistible, that he had previously apprised his client of the intention of his adversary to exact the penalty given by the statute. But the ground of surprise charged and relied upon in this case is that Fowler, the attorney of Bettison, in violation of his agreement to settle the case out of Court, brought on the trial and obtained the judgment, and that too without ever having' given any notice of such his intention. This allegation is utterly unsupported by the proof. The testimony shows most clearly that no such intention ever was entertained by Fowler, until after the cause was actually called by the Court. Baldwin testifies himself that when the cause was reached upon the docket and called by the Court, that Fowler spoke to him of some arrangement or understanding between himself and Lawson, but that if he (Baldwin) wished to go on and settle upon the record as shown, he had no objection. He further stated that he then told him (Fowler) that Lawson had before told Mm the same thing, but that as the case had been called for trial he supposed that he (Fowler) intended to go on with it. TMs is the testimony of the appellant’s own witness and as a matter of course, he cannot object to abide its legal effect. It most assuredly would not be contended that here is any evidence that Fowler intended prior to the calling of the cause to urge or insist upon a trial at that term. It is perfectly apparent that so far from Fowler intending to urge a trial at the term at which the judgment was rendered, the proof is strong that such was not the case; but that, on the contrary, his expectation was to continue it over, and that he only consented to take it up and to dispose of it, when Baldwin, in rather a .taunting manner, intimated his readiness to go into the trial. It will be found, upon a close scrutiny of the testimony of both Fowler and Baldwin, that Fowler did not say that unless Lawson came forward and settled that he would progress with the suit, and exact the full penalty, but that the purport of his message was that he must come and pay up, as he intended or expected to exact the full penalty. What was the necessary inference which Fowler must have drawn from the conduct of Baldwin, when he found him in the case arguing a demurrer, and'after the law arising upon the same was adjudged against his client, resting upon it, and submitting the cause to the Court to be tried upon the issues joined? Was he not fully authorized to conclude that Baldwin had delivered his message and that upon a consultation between him and his client, Lawson, they had waived the privilege of a private settlement, and preferring to take the chances of a trial in Court, had resolved to do so ? This is the only rational conclusion to which he could arrive, in view of all the facts and circumstances connected with this transaction. Indeed the plaintiff in the suit at law would seem to have better ground of complaint than the opposite party, for it is obvious that he did not anticipate a trial and that it was necessarily forced upon him. True it is, that Baldwin stated that after having taken up the case for the purpose of arguing a demurrer, it was suggested to him by Fowler that there was an understanding between the parties that it should be settled out of Court, and that upon such suggestion he first expressed a desire to get out of the trial, and, that finally, he absolutely refused to go into it. This portion of his testimony is completely nullified by the record and the other proof introduced upon the trial, and consequently must be regarded as being entirely out of the view of this Court. Under this view of the evidence, it is clear that there is not the slightest groud of surprise that can fairly be predicated upon the conduct of Fowler, but on the contrary he is shown to have acted with the most perfect fairness and consistency throughout the whole transaction; at least, so far as bringing on the trial is concerned. We are therefore clear, that so far from Fowler intending to take any advantage of Lawson by bringing on the trial, at a time when he was not present and prepared to make his defence, he did every thing that could have been required of him, when he signified his willingness to continue it again, and only consented to take it up when he was invited to it by Lawson’s attorney. When a party employs an attorney at law, either to prosecute or to defend his suit in the Courts of the country, he presents him to the opposite party and to the world as his accredited agent, and as such, ho must be concluded by his acts, or omissions, where no fraud or unfairness is made to appear. But upon the supposition that fraud or unfairness has been shown, so as to occasion a surprise, the point to be determined then is whether the appellant has been injured thereby. If he has failed to disclose a legal defence to the action instituted by the appel-lee up on his official bond, then it is that although he may have been the victim of fraud or contrivance, still he is not entitled to relief in a Court of Equity. That this is the law, is fully established by the authorities already referred to, as well as numerous others which might be cited. By his return upon the several executions exhibited, the appellant has furnished ample evidence from which the Court was fully warranted in finding the amount against him, which is specified in the judgment. The point now to he decided is, whether the showing which he has made in his bill, admitting that he had availed himself of its entire benefit, would have discharged him from his legal liability. It was expressly adjudged by this Court, in the case of Randolph v. Ringgold et al., (5 Eng. Rep. 282,) that an attorney at law, who acts under his general authority as such, has no power to receive nor to give directions for the receipt of anything but legal current money upon executions for their clients, and that in such a case the debt remained unpaid, and that the plaintiff in execution might elect to set aside the sheriff’s return, and sue out an alias execution, or sue the attorney for the value of the debt collected.” This doctrine is well supported by authority, and its soundness is believed not to admit of a single doubt. What then is the state of case in relation to payment as disclosed by this bill? The allegation in the bill is that Presley, a friend of Whitmore, paid Fowler, the attorney of the appellee, two hundred and sixty-five dollars in Arkansas bank paper, and that such payment entitled the judgment to a credit of one hundred and ninety-five dollars and seventy-five cents, and further that he was advised that he had a valid defence to the whole action, and that if Fowler had given him any notice of his intention to prosecute his suit, and thereby enabled to set forth his de-fence on the trial, that 'Bettison could not have obtained judgment for one cent. Admitting the payment to have been made in Arkansas paper as represented in the bill, it is clear that Bet-tison was not precluded by it from a recovery against Lawson, unless it has been shown that Fowler was vested with a special authority to receive such payment by Bettison. The answer of Bettison, which is the only evidence touching that matter, is that, “ In the summer or fall of 1847, Lawson, in Louisville, Kentucky, stated that it was a hard case for him to pay the damages embraced in said judgment, but that he was willing to pay the principal and legal interest if he (Bettison) would compromise at that, which he refused to do, but referred him to his attorney, Fowler, as having the control of the case, and stated he did not mean to interfere at all, but would leave it entirely to said Fowler. We do not understand from what .Bettison said upon that occasion that he admitted that Fowler had authority to receive the amount actually and justly due in depreciated paper, but simply that if he should deem it unjust to exact the penalty, he might remit the same, and this would seem to be the full extent of his admission, as that was all that Lawson requested. If this be the extent of his admission, then it is, that under the authority already cited, the payment in Arkansas paper, even though it had been the whole amount of the debt, would not have amounted to an extinguishment, and as such it would have been inadmissible as evidence of payment on the trial at law. True it is that he further alleges that had he been advised of Fowler’s intention to insist upon a trial, that from the advice which he had received, he believed that he could have made a complete defence! What the character of this full defence was, does not appear, and consequently it is not entitled to any consideration whatever. Upon an application of this nature, it is indispensable that the particular facts constituting the defence should be disclosed in order that the Chancellor may determine whether it could have availed the party or not on the trial at law, and consequently, whether he has suffered any injury by not being permitted to have the benefit of it. Hut there is yet another view of this case, which, if it stood alone upon it, would leave it a doubtful question whether the relief sought ought to be granted. The law is well settled that the complainant is required to present himself under circumstances, showing clearly that the facts which he charges as the foundation of his surprise, are unmixed with negligence on his part, (See Town v. Sneed, 4 Eng. Rep. 540, and. the au-' thorities there cited.) What then are the facts of this case as presented by the proof? In April, 1844, Bcttison instituted his suit against Lawson upon Ms official bond, and at the April term, 1847, the judgment complained of was rendered by the Court. Here then are just three years permitted to elapse by Lawson in order to bring about a settlement of the case out of court, and that too without one scintilla of showing, that he ever, during the whole of that time, came forward and made the slightest effort to effect such settlement. It certainly cannot be that he supposed he would be permitted to keep the cause forever pending upon a mere matter of favor and indulgence, and that extended too without any apparent motive, or the least consideration by his adversary. It cannot be reasonably contended that Fowler, by consenting to continue the case from term to term for the space of three years, was therefore under kny legal obligation to continue it forever. This would be a most unreasonable and unfair construction of the understanding as disclosed by the testimony, and all that could be claimed either in law or morals, would be a reasonable time for Lawson to procure his proof and to come forward. Jf Fowler consented to a continuance of the cause for three years, as a matter of favor to Lawson, and solely to give him an opportunity to prepare himself for the settlement, we consider that'in all conscience he can have no just cause of complaint, and more especially when it is not made to appear that Lawson ever, during the whole time, used the least exertion to bring about the object for which he had caused so great delay. This state of fact, it seems to us, cannot be said to show that kind of diligence which the law favors, but, on the contrary, a high degree of negligence. Upon this ground, therefore, we think, to say the least of it, that Chancery would not regard his application in a very favorable light. In view of the apparent harshness of the penalty which the law visits upon the sheriff, who retains money in his hands and in order to afford all the relief which could be granted in accordance with the principles of equity, we have looked into this case in all its various phases, and after a full and thorough investigation, we have been forced to the conclusions already announced. This being the case, the decree must in all things be" affirmed.